1   OLIVIER & SCHREIBER LLP
    Christian Schreiber (SBN 245597)
2   475 14th Street, Suite 250
    Oakland, CA 94612
3   Telephone: (415) 484-0980
    Facsimile: (415) 658-7758
4   E-mail: christian@os-legal.com

5   *Attorneys for Plaintiff*
    [Additional counsel on Signature Page]
6

7                        **UNITED STATES DISTRICT COURT**

8                       **NORTHERN DISTRICT OF CALIFORNIA**

9

10  Larkland Studios, LLC, individually and        Case No. _____
    on behalf of all others similarly situated,
11
             Plaintiff,
12
    v.                                             **CLASS ACTION COMPLAINT FOR:**
13
    SANDISK LLC and WESTERN                        1.  **BREACH OF IMPLIED WARRANTY**
14  DIGITAL CORPORATION,                               **OF MERCHANTABILITY;**
                                                   2.  **UNJUST ENRICHMENT;**
15           Defendants.                           3.  **VIOLATIONS OF CALIFORNIA'S**
                                                       **UNFAIR COMPETITION LAW;**
16                                                 4.  **VIOLATIONS OF CALIFORNIA'S**
                                                       **FALSE ADVERTISING LAW; AND**
17                                                 5.  **FRAUD BY OMISSION**

18                                                 **DEMAND FOR JURY TRIAL**

19

20

21

22

23

24

25

26

27

28

Plaintiff Larkland Studios, LLC ("Plaintiff") brings this action on behalf of itself and all others similarly situated against SanDisk LLC ("SanDisk") and Western Digital Corporation ("Western Digital") (collectively, "Defendants"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to itself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      Western Digital and its CEO have stated that data storage is "one of the fundamental building blocks of the technology architecture that all of us depend upon."[1] Unfortunately, Defendants have sold numerous defective SanDisk and Western Digital solid-state drives ("Drives" or "SSDs") upon which their customers can no longer depend or rely.[2] Defendants suggest their SSDs are appropriate for photographers, videographers, and other creative professionals and hobbyists who need to work with and preserve large data files. However, these SSDs face an extreme risk of failing within months or even days of purchase due to a design and manufacturing defect (the "Defect"). "Drive failure" in this context means that all data from the Drives is lost, including the internal file system, and new data cannot be added even if the Drive is reformatted.[3] The result is that tens of thousands—or hundreds of

---

[1] *Western Digital Corporation (WDC) CEO David Goeckeler Presents At Goldman Sachs Communacopia & Technology Conference (Transcript)* Seeking Alpha (call Aug. 30, 2023), https://seekingalpha.com/article/4633225-western-digital-corporation-wdc-presents-goldman-sachs-communacopia-and-technology-conference (last accessed September 28, 2023); Annual Report, Western Digital Corporation at 4 (Form 10-K) (June 30, 2023) ("From the intelligent edge to the cloud, data storage is a fundamental component underpinning the global technology architecture.").

[2] The specific drives at issue are the: (1) SanDisk Extreme Portable 4TB (SDSSDE61-4T00), (2) SanDisk Extreme Pro Portable 4TB (SDSSDE81-4T00), (3) SanDisk Extreme Pro Portable 2TB (SDSSDE81-2T00), (4) SanDisk Extreme Pro Portable 1TB (SDSSDE81-1T00), (5) SanDisk Pro-G40 Portable SSD, and (6) Western Digital My Passport 4TB (WDBAGF0040BGY). "TB" stands for terabyte. One TB is equivalent to 1,000 gigabytes.

[3] Scharon Harding, *SanDisk Extreme SSDs keep abruptly failing – firmware fix for only some promised*, ARS TECHNICA (May 19, 2023) https://arstechnica.com/gadgets/2023/05/sandisk-extreme-ssds-keep-abruptly-failing-firmware-fix-for-only-some-promised/ (last accessed October 8, 2023).

CLASS ACTION COMPLAINT

thousands—of consumers and working professionals who have trusted Defendants to safely store their data have lost untold terabytes with only a paperweight in the shape of an SSD to show for it. Once lost, the data cannot be retrieved from the SSDs, and, especially for creative work such as photographs, or milestone video footage such as the recording of a wedding, such work cannot be recreated. Accordingly, Plaintiff brings this class action on behalf of purchasers of the SSDs.

2.    The Defect manifests in an identical manner across the Drives. Every Drive manufactured has this Defect. The Drives are thus substantially similar.

3.    SanDisk downplayed the issue while continuing to encourage consumers to save their memories and other data on these devices. Defendants' one and only attempt at fixing the Defect in May 2023 was unsuccessful.[4] Despite this, SanDisk continues to sell the Drives and has even placed them on steep discount in what appears to be an effort to clear its shelves of defective stock.

4.    Defendants have not issued or announced any recall, reimbursement, or replacement program, nor have they disclosed the Defect to consumers (the "Omissions").

5.    The cause of the Defect has not yet been made public.

6.    Data creation and data storage is a central facet of modern life. Defendants' ongoing failure to address these serious issues pertaining to the Drives is egregious and in contravention of California and federal law.

7.    Plaintiff Larkland Studios, LLC asserts claims on behalf of itself and a nationwide class of similarly situated purchasers of the affected Drives for: (i) breach of the implied warranty of merchantability; (ii) unjust enrichment; (iii) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (iv) violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*; and (v) fraud by omission.

---

[4] Sean Hollister, *We just lost 3TB of data on a SanDisk Extreme SSD*, THE VERGE (August 7, 2023), https://www.theverge.com/22291828/sandisk-extreme-pro-portable-my-passport-failure-continued (last accessed October 9, 2023).

**THE PARTIES**

A.     **Plaintiff Larkland Studios LLC**

8.     Plaintiff Larkland Studios LLC is a Florida LLC with its principal place of business in the city of Sunrise, Florida. Plaintiff's owner, Larkland Alexander Burton purchased two (2) SanDisk Extreme Pro Portable SSD with 2TB of storage in 2021 from a retail store believed to be Best Buy. The SanDisk Extreme Pro Portable SSD remains in the possession of Larkland Studios and Mr. Burton.

9.     Larkland Studios provides cinematography, editing, and directorial services and uses multiple memory drives to store its professional video and photographic images. Larkland's owner, Mr. Burton, took the SSD drives from Defendants on a photo shoot to store data from his work. Shortly after the photo shoot, Plaintiff discovered one of the SSD drives had failed, causing Plaintiff to lose all of the data stored on that drive, which contained video and photographic images taken for its business purposes. Upon discovery of the drive failure, Plaintiff stopped using both of the SSDs it had purchased.

10.     Plaintiff saw and relied upon the Drive's packaging. During the time it purchased and used the Drives and due to the Omissions by Defendants, Plaintiff was not aware of the Defect affecting the Drives, and only learned of the problem after the Drive failed and erased a substantial portion of the footage Mr. Burton had taken on the photographic shoot. Had Plaintiff known about the Defect before purchasing the Drive it would not have made the purchase and would have bought an SSD from another manufacturer. Plaintiff would be willing to purchase Defendants' products in the future, so long as Defendants fix the Defect and properly label their products going forward.

B.     **Defendant SanDisk**

11.     SanDisk LLC is a Delaware limited liability company with its principal offices in Milpitas and San Jose, California. SanDisk is a wholly owned brand of Western Digital. SanDisk's current headquarters is located at 5601 Great Oaks Parkway, San Jose, California.

12.    SanDisk LLC develops, manufactures, and sells data storage solutions, including memory cards and readers, USB flash drives, digital media players, wafers, and other related components. SanDisk sells products in the United States.[5]

13.    SanDisk was founded in 1988 and has offices in Milpitas and San Jose, California. It makes and sells embedded flash products used in mobile telephones, laptops, e-readers, global positioning devices, and computing platforms. SanDisk provides solid state drives that can be used instead of hard disk drives.[6] In 2014, SanDisk received $6.6 billion in revenue and had approximately 8,700 employees. In 2015, Western Digital announced it had agreed to acquire SanDisk.[7]

### C.    Defendant Western Digital Corporation.

14.    Western Digital Corporation is a Delaware corporation with headquarters in San Jose, California. Western Digital describes itself as a leading developer, manufacturer, and provider of data storage devices and solutions based on both NAND flash and hard disk drive technologies. It has divisions and product segments dedicated to flash-based products ("Flash") and hard disk drives.[8] In 2022, Western Digital's Flash business segment had $9.753 billion in revenue and its HDD segment posted $9.040 billion in revenue.[9]

15.    Western Digital Corporation was founded in 1970. As of 2015, it was based in Irvine, California. In 2014, it manufactured hard drives and other digital storage devices, had about 76,000 employees, and posted $14.6 billion in 2014 revenue. In 2015, Western Digital

---

[5] Company Report, SanDisk LLC (Bloomberg Sept. 21, 2023).

[6] Profile, *SanDisk*, Forbes, https://www.forbes.com/companies/sandisk/?sh=2cf32f257519 (last accessed September 29, 2023).

[7] Chad Bray, *Western Digital to Buy Memory Chip Maker SanDisk for $19 Billion,* DealBook – New York Times (Oct. 21, 2015), https://www.nytimes.com/2015/10/22/business/dealbook/western-digital-to-buy-memory-chip-maker-sandisk-for-19-billion.html?searchResultPosition=2 (last accessed September 29, 2023).

[8] Form 10-K at 4.

[9] *Id.* at 36.

1   announced it had agreed to acquire SanDisk Corporation in a cash-and-stock transaction worth

2   around $19 billion.[10] Western Digital acquired SanDisk Corporation in 2016 and has designed

3   and manufactured all SanDisk products since. Accordingly, Western Digital designed and

4   manufactured the defective Drives at issue in this action.

5       16.     Western Digital's principal facilities for manufacturing Flash equipment like SSD

6   drives are in San Jose, California and Shanghai, China. Western Digital conducts much of its

7   research and development at the 2,205,000 square foot facility it owns in San Jose.  Accordingly,

8   Defendants both conduct business in California and the other United States.

9                         **JURISDICTION AND VENUE**

10      17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

11  1332(d) because there are more than 100 class members and the aggregate amount in controversy

12  exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a

13  citizen of a state different from Defendants.

14      18.     This Court has personal jurisdiction over Defendants because Defendants conduct

15  substantial business within California and in this District, such that Defendants has significant,

16  continuous, and pervasive contacts with the State of California. Additionally, Defendants'

17  principal places of business are in this District.

18      19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants

19  do substantial business in this District, a substantial part of the events giving rise to Plaintiff's

20  claims took place within this District (*e.g.*, the research, development, design, and marketing of

21  the SSDs), and Defendants' principal places of business are in this District.

22                         **FACTUAL ALLEGATIONS**

23      20.     Defendants sell data storage equipment based on hard disk drive technologies and

24  on NAND flash technologies. Western Digital's products "generally leverage a common

25  platform for various products within product families, and in some cases across product families,

26

27  [10] Bray, *supra*.

28                                  - 5 -

resulting in the commonality of components" to mitigate demand changes, facilitate inventory control, and "to achieve lower costs through purchasing economies."[11] As one of Western Digital's two major business segments, Flash technologies are one of their common platforms, part of which is producing solid-state or SSD drives.

21.    Solid-state drives are a type of long-term data storage device. As the name suggests, solid-state drives have no moving parts. Information is written and retrieved from flash memory chips electrically.[12] In layman's terms, SSDs are the next step in memory evolution after magnetic-based "hard drives" traditionally found in desktop computers.

22.    Traditional hard disk drives store data on a physical disk that spins around inside a housing. In contrast, SSDs store data in integrated circuits in NAND memory chips.

23.    For consumers' computers, Apple introduced SSD drives on its Air laptops around 2010. Samsung and Toshiba supplied these SSD drives for Apple at that time, although SanDisk was allowed to make some Apple drives by 2015.[13]

24.    Aside from its hard disk drive technologies, Defendants' storage products are based on NAND flash technology.[14]

25.    Toshiba engineers Fujio Masuoka and Hisakazu Iizuka filed the first patent for the invention of flash memory. It was originally referred to as Electrically Erasable Programmable

---

[11] Form 10-K at 5.

[12] *What is a solid-state drive?*, IBM, https://www.ibm.com/topics/solid-state-drives#:~:text=A%20solid%2Dstate%20drive%20(SSD,known%20as%20pages%20or%20sectors (last accessed October 9, 2023).

[13] Cody Henderson, *The Ultimate Guide to Apple's Proprietary SSDs*, beetstech (June 6, 2017), https://beetstech.com/blog/apple-proprietary-ssd-ultimate-guide-to-specs-and-upgrades (last accessed October 9, 2023).

[14] See Form 10-K at 4; *id.* at 5 ("Flash products provide non-volatile data storage based on flash technology."); *id.* at 33 (claiming to be leading developer of "data storage devices based on both NAND flash and hard disk drive technologies").

Read-Only Memory (EEPROM), but informally became known as "flash" because it could be wiped and reprogrammed as quickly as a camera flash.[15]

26.    In flash technology, memory cells store information. These memory cells have floating-gate transistors that can capture an electrical charge (electrons) for extended time periods. A transistor is a type of semiconductor that can enhance or switch electrical power. This switching ability is useful for computer memory because it can function as a button or switch to change the chip's "state" or charge condition.[16] Depending on where voltage is applied to a floating gate transistor, its cells can perform reading, writing, and erasing tasks.

27.    Normally, transistors return to their original state when power is turned off, so any data in them is lost. (By analogy, a computer's temporary or random access memory (RAM) loses its data when the computer is turned off).

28.    Typical memory transistors have three connections (1) source, (2) drain, and (3) gate connections. Current enters through the source connection. It may escape and flow away through the drain. The gate may block the pathway and limit the current's flow. When the gate is shut, no current can flow, turning the transistor off. When the transistor is off, it stores a zero (0); when the gate is unlocked, power flows through the transistor, activating it to store a one (1). (Computers store data through accumulations and patterns of many zeroes and ones). A basic transistor cannot remember what its state was when it was last turned off.

29.    A flash transistor is unique because it has a third connection called a floating gate. This second gate floats on top of the first gate. "When the gate is unlocked, electricity seeps through the very first gate and lingers between the first and second gates. Even if the power is off, electricity remains circulating across the two gates."[17]

---

[15] Chiradeep BasuMallick, *What is Flash Memory? Types, Working, Benefits and Challenges*, Spiceworks (Feb. 22, 2023), https://www.spiceworks.com/tech/hardware/articles/what-is-flash-memory/ (last accessed October 9, 2023).

[16] *Id*.

[17] *Id*.

CLASS ACTION COMPLAINT

30.     In a flash transistor, the floating gate selects the zero or one state based on the memory's state before it was turned off. If it has stored energy, that prevents new current from flowing through, and the transistor records a zero state. Clearing the stored energy allows current to flow again, and the transistor registers a one (1). "A floating gate is a way a flash transistor retains information regardless of whether or not the power is on."[18]

31.     The following figure illustrates a floating gate transistor's parts:[19]



32.     Flash memory devices can track tiny bits of data using "not-or (NOR)" or "not-and (NAND) technology. Solid-state and USB flash memory sticks, cameras, videos, and audio players use NAND storage, as do the SSDs that Defendants make and sell that are the subject of this action.

33.     NAND flash storage is a storage integrated circuit, sometimes called a chip. An integrated circuit is an assembly of hundreds of millions of transistors on a tiny chip that is about a half-millimeter square. Storage integrated circuits are used to store material and usually used for computers, including DRAM, SRAM, and NAND flash.[20]

---

[18] *Id.*

[19] *Flash Memory*, PC Mag Encyclopedia, https://www.pcmag.com/encyclopedia/term/flash-memory (last accessed October 9, 2023).

[20] *Electronics Basics: What Are IC, Chip, Semiconductor, and Wafer?* PCBOnline (May 28, 2021), https://www.pcbonline.com/blog/ic-vs-chip-vs-semiconductor-vs-wafer.html (last accessed October 9, 2023).

34.    A chip has a package of pathways, circuits, and transistors that work together to carry out a task (or tasks). Chips are implanted in wafers. A wafer is a thin slice of semiconductor material, or substrate, that serves as the base for the chip. The wafer is usually made by purifying raw silicon into crystals, and then slicing the crystals into thin portions called wafers.[21]

35.    More recently, memory uses favor 3D flash or "stacked" technology, originally developed by Samsung. This technology uses a mechanism known as a charge trap instead of floating gates, to stack multiple levels of memory cells on a single wafer to increase storage capacity.[22]

36.    Flash memory involves a number of challenges or limitations that can affect performance and reliability, including wear, erasure, crosstalk, and sensitivity. Flash memory "has a finite number of program/erase (P/E) cycles" before cell integrity begins to fail. Its data must be erased in entire blocks, which can contribute to memory wear. Reading NAND flash memory can change nearby cells over time. Further, X-rays and other high-energy particles can change zeros into ones in flash memory cells.[23]

37.    Manufacturers have worked to increase the density and reduce the cost per unit of NAND flash storage. For example, single-level cells (SLC) stored one bit per cell, so it was the most expensive kind of NAND flash storage, but also had the highest endurance. Then multi-level cells (MLC), triple-level cells (TLC), and quad-level cells (QLC) stored progressively more information in each cell, and were less expensive, but had less endurance.[24]

---

[21] *What is the Difference Between a Wafer and a Chip*, Wafer World (April 15, 2021), https://www.waferworld.com/post/what-is-the-difference-between-a-wafer-and-a-chip (last accessed October 9, 2023).

[22] BasuMallick, *supra*.

[23] Stephen J. Bigelow and Margaret Jones, *NAND Flash Memory*, TechTarget, https://www.techtarget.com/searchstorage/definition/NAND-flash-memory (last accessed October 9, 2023).

[24] *Id*.

CLASS ACTION COMPLAINT

38.    Along with its cost-cutting emphasis, Western Digital states it has "developed and commercialized successive generations of 3-dimensional flash technology with increased numbers of storage bits per cell in an increasingly smaller form factor, further driving cost reductions."[25]

39.    A key Western Digital supplier, Kioxia, spoke at a recent conference "about their recently introduced BiCS 8th generation 218-layer NAND flash product which increases storage density by 50% from the prior Gen 6 product…"[26] A writer summarized the announcement as saying Kioxia "announced higher density NAND flash using denser memory columns and the use of bonded logic and memory wafers."

40.    There are many manufacturers who make SSDs. Since SSDs are used as the primary storage solution in consumer, commercial, and industrial applications, the industry tracks malfunction and error rates, and there are statistics on expected rates of drive failure (just as there are statistics on expected failure rates on many forms of commercial equipment).

41.    A hard disc drive ("HDD"), on the other hand includes a spinning circular magnetic disk containing many tracks and sectors that retain data, and an actuator arm that moves across the platter to read and write data.[27]

42.    SSDs have substantially faster read and write times granted by solid-state storage. This means that SSDs have become the de facto mode of data storage, especially in scenarios where consumers need to quickly access and store data while on-the-go. Further, in theory, and in some applications, SSDs should be more reliable because they lack all the moving parts in an HDD.

---

[25] Form 10-K at 5.

[26] Tom Coughlin, *Kioxia and Samsung New Products at the 2023 FMS*, Forbes (Aug. 21, 2023), https://www.forbes.com/sites/tomcoughlin/2023/08/21/kioxia-and-samsung-new-products-at-the-2023-fms/?sh=7f5c5a8b1143 (last accessed October 9, 2023).

[27] *What is a hard disk drive (HDD)?* CRUCIAL, https://crucial.com/articles/pc-builders/what-is-a-hard-drive (last accessed October 9, 2023).

CLASS ACTION COMPLAINT

43.     Both SSDs and HDDs should be expected to last *at least* three (3) to five (5) years with regular use.[28] Some estimates say SSDs can last for ten years under normal workloads.[29] An HDD typically fails because of the immense physical stress that the metal discs are placed under as they spin. SSDs are different in that they typically fail after a large amount of data has been written to the drive.

44.     Manufacturers of SSDs use "total terabytes written" (TBW) as the metric by which they estimate the useful life of the drive to consumers. For example, if an SSD had a TBW of 2,000 terabytes ("TB"), after a user had written 2,000 TB to the drive, they may begin to experience data loss and corruption.

45.     The TBW metric for the Drives at issue in this case are unknown and not disclosed to consumers. However, but for the Defect, the TBW metrics for the Drives may be in the hundreds or thousands of terabytes.

46.     Reasonable consumers like Plaintiff thus purchase SSDs with the expectation that they will last years before being at risk of failure.

**Defendants' Products and the Defect**

47.     The Drives, at a minimum, include:

---

[28] Mark Coppock, *How Long Do Hard Drives (and SSDs) Last?* NEWEGG.COM (June 21, 2021)  https://www.newegg.com/insider/how-long-do-hard-drives-and-ssds-last/  (last accessed October 9, 2023).

[29] *Id.*

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(a)    SanDisk Extreme Portable 4TB (SDSSDE61-4T00);



(b)    SanDisk Extreme Pro Portable 4TB (SDSSDE81-4T00);



CLASS ACTION COMPLAINT

1

2          (c)    SanDisk Extreme Pro Portable 2TB (SDSSDE81-2T00);

3

4

5

6          

7

8

9

10

11

12         (d)    SanDisk Extreme Pro Portable 1TB (SDSSDE81-1T00);

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

(e)    SanDisk Pro-G40 Portable SSD; and



(f)    Western Digital My Passport 4TB (WDBAGF0040BGY).



48.    Defendants are engaged primarily in the manufacture and sale of computer drives and data storage solutions, and they are a near household name when it comes to SSDs.

49.    Both SanDisk (before it was acquired) and Western Digital have been players in the data storage market for decades. SanDisk was founded in 1988 and Western Digital was founded in 1970 as General Digital Corporation.

50.     Because of their longstanding position at the top of the market, consumers have grown to recognize the Western Digital and SanDisk branded drives as being high-quality, dependable, products.

51.     Defendants lean into their reputability and represent their Drives as being high-quality and dependable.

**Defendants' Marketing and Representations**

52.     Defendants represent the quality of their flash memory products through their marketing statements. Western Digital disclosed to investors and the SEC that "We perform our marketing and advertising functions both internally and through outside firms utilizing both consumer media and trade publications targeting various reseller and end-user markets."[30] Therefore, Defendants make their marketing, promotional literature and other advertising strategies and decisions at their headquarters in California, and their packaging, websites, other advertising, and other marketing decisions emanate and flow from from their California headquarters to customers in California, Florida, and the rest of the United States. Defendants have marketed their SSDs on YouTube, which has its headquarters in San Bruno, California.[31]

53.     Manufacturers project their marketing messages through their websites, reviewers' guides, product labels, packaging and associated documentation, and advertising or user forums.

54.     Defendants' product labels include statements that convey to consumers their Drives are durable and capable of saving, storing, and retrieving data such as: "Sustained performance for professional grade videos and photos"; "High-speed storage designed to keep you moving"; and "Supercharged speeds. Ultra-rugged durability."

55.     Western Digital represented on its website that "the SanDisk Extreme PRO Portable SSD provides powerful solid-state performance in a rugged, dependable storage

---

[30] Form 10-K at 9.

[31] *Where Is the Headquarters of YouTube?* https://www.worldatlas.com/articles/where-is-the-headquarters-of-youtube.html (accessed October 15, 2023).

CLASS ACTION COMPLAINT

1  solution," and "Get powerful NVME™ solid state performance featuring 2000MB/s2 read/write

2  speeds in a portable drive that's reliable enough to take on any adventure."[32]

3       56.     Similarly, on Sandisk's website, it represented that its Extreme Pro line of SSDs

4  are "a rugged, dependable storage solution" that are "reliable enough to take on any

5  adventure."[33] Defendant further makes essentially the same representations about its line of

6  Extreme SSDs, describing them as "portable, reliable storage," "durable drive[s] that can take a

7  beating" and as a "brand professional photographers trust to take on assignments"[34] and

8  Professional Pro-G40 SSDs as offering "incredible performance" that are "ultra-fast, ultra-

9  rugged" and "[d]esigned with exceptional technology and materials to ensure the SSD's ultra-

10  durable exterior matches its powerful interior."[35]

11       57.     Defendants intended to create the reasonable expectation among purchasers that

12  their SSD drives were able to conform to those specifications.

13       58.     For example, an advertisement on B&H Photo Video's website states the

14  "SanDisk Extreme Portable SSD is tough enough to take" into the field and "ensures your data is

15  ready" thanks to its "durable and secure features," including dust and water resistance, drop

16  protection and encryption. Another part of the ad shows the product next to a camera lens, and

17  states the drive is "ideal for any creative professionals such as photographers or videographers

18  working on projects while out in the field." [36]

19

20  [32]     https://www.westerndigital.com/products/portable-drives/sandisk-extreme-pro-usb-3-2-

21  ssd?sku=SDSSDE81-1T00-G25 (last accessed October 9, 2023).

22  [33]     https://www.westerndigital.com/products/portable-drives/sandisk-extreme-pro-usb-3-2-

23  ssd?sku=SDSSDE81-1T00-G25 (last accessed October 9, 2023).

24  [34]     https://www.westerndigital.com/products/outlet/portable-drives/sandisk-usb-3-2-

25  ssd?sku=SDSSDE30-1T00-G25 (last accessed October 9, 2023).

26  [35]     https://www.westerndigital.com/products/portable-drives/sandisk-professional-pro-g40-

    ssd?sku=SDPS31H-001T-GBCND (last accessed October 9, 2023).

27  [36]    *SanDisk 2 TB Extreme Portable SSD V2 (Black),* B&H Photo-Video-Audio,

28  https://www.bhphotovideo.com/c/product/1595432-



**It Goes Where You Go**

Use the handy carabiner loop to attach the drive to your belt loop or backpack for extra security when you're out in the world. Travel worry free thanks to a durable silicon shell that offers a premium feel and added protection to the drive's exterior, making this drive ideal for any creative professionals such as photographers or videographers working on projects while out in the field.

59.     A YouTube video from SanDisk embedded on that SanDisk page includes a scene of the SSD product hitched to a laptop computer showing photographs on the computer's screen. Another scene from the YouTube video showed an SSD drive suspended in a forest, with a callout stating, "Up to 2 Meter Drop Protection." Another scene shows the SDD product with the captions SanDisk Extreme® Portable SSD and "IP55* Water & Dust Resistant," meaning the product could withstand water and dust.

60.     Another YouTube video from SanDisk portrays a woman walking in the forest and taking pictures with her camera. Another scene in that forest video shows her plug her SanDisk drive in to her computer and work with photographs on the computer.[37] Another scene in the same video shows the SanDisk with the captions, "Rugged design" and "Rated IP55 for water-and dust-resistance."



Speed up your
photography workflow

REG/sandisk_sdssde61_2t00_g25_2tb_extreme_portable_ssd.html/overview     (last     accessed October 9, 2023).

[37] https://www.youtube.com/watch?v=on0B70waoM8 (last accessed October 9, 2023).





**Defendants' Cost-Cutting in Recent Years**

61.     However, Defendants' leadership has also sought to increase Western Digital's profits by cutting costs. In August 2023, Western Digital's CEO David Goeckeler spoke at a Goldman Sachs investment conference.[38] Goeckeler stated he wanted to become "more Asia centric" related to their many factories and workers there, so they "brought in a new Head of Operations in Singapore, just made a huge amount of changes in the way we are organized," and "it's taken now taking a lot of cost out of the system." He mentioned paying down $2.7 billion in debt in the 3.5 years since he became CEO.

---

[38] *Western Digital Corporation (WDC) CEO David Goeckeler Presents At Goldman Sachs Communacopia & Technology Conference (Transcript)* Seeking Alpha (call Aug. 30, 2023), https://seekingalpha.com/article/4633225-western-digital-corporation-wdc-presents-goldman-sachs-communacopia-and-technology-conference (accessed October 9, 2023).

CLASS ACTION COMPLAINT

62.     Goldman Sachs analyst Toshiya Hari noted that Goeckeler talked about CapEx cuts and production cuts a couple quarters before and asked if management was "cutting into muscle." Goeckeler stated he had brought in people whose focus was "that we're going to put in a very disciplined ROI based portfolio approach" to know what to make and to rank "what has the highest return." On the core focus of Western Digital's NAND portfolio, Goeckeler mentioned a road map as the foundation of their portfolio. He stated, "You've got to have the best cost in the industry and we think about this very, very clearly."[39]

63.     Western Digital's annual disclosure report to investors and the Securities and Exchange Commission echoed management's cost-cutting drive. The Form 10-K noted that manufacturing either hard disk drives or "Flash" are complex processes to produce components with narrow tolerances that demand skilled engineering "to control the operating costs of these manufacturing environments." It added, "We continually evaluate which steps in the manufacturing processes can improve productivity and reduce manufacturing costs."[40]

64.     Discussing risks of the business, Western Digital's SEC disclosure stated cost saving measures and restructuring efforts could cause workforce reductions and consolidation of manufacturing and other facilities. "As a result of these actions, we may experience a loss of continuity, loss of accumulated knowledge, disruptions to our operations and inefficiency during transitional periods." Such actions "could also impact employee retention."[41]

---

[39] *Id.*

[40] Form 10-K at 7.

[41] *Id.* at 19.

CLASS ACTION COMPLAINT

**SanDisk Product Failures**

65.    Contrary to Defendants' advertising and the image of reliability they seek to lean on, as of late Defendants' reputation for quality and dependability has earned a nosedive due to failures of the drives.

66.    In January 2023 complaints had begun to surface that SanDisk's Extreme and Extreme Pro Portable SSDs were suddenly wiping data and becoming unreadable.[42] For example, customers encountered error messages such as:[43]



67.    In February 2023, a Reddit user raised a flag warning about the SanDisk 4TB Extreme Pro Portable SSDs in particular, saying: "Multiple DITs/Loaders/ACs on both coasts have experienced the exact same failure with these drives over the last month. The symptom seems to be that after a sustained write they will completely lose their filesystem and it's a total crap shoot whether you can recover it or not." Numerous comments were posted in reply to the warning, with many users chiming in that they had experienced the same issue with their

---

[42] *See* Harding, *SanDisk Extreme SSDs Keep Abruptly Failing, supra.*

[43] Hollister, *We Just Lost 3TB of Data on a SanDisk Extreme SSD, supra.*

CLASS ACTION COMPLAINT

1  SanDisk Drives. Other consumers have also complained on Reddit that their SanDisk SSD drives

2  failed.[44]

3       68.     One writer complained that their SSD failed after five days of use on a Mac

4  Studio, stating they could not force the SSD to remount or reformat it, saying "Just a brick."

5  Another stated his drive failed "right out of the box." Another stated two "brand new SanDisk

6  Pro 2TB SSDs" had "corrupted within days of original purchase," and they were adding their

7  drives "to the pile here." Another writer complained their SSD died "on exfat and windows."[45]

8       69.     Another writer on that post complained of saving 250 clips from five games in

9  their son's sports tournament on a 1TB Extreme Pro SSD and the drive "disappeared off the

10  desktop and were gone from the SSD when they restarted the computer.[46] Another, a still

11  photographer, described opening their Bridge photo editing software and watching as "image by

12  image, row by row, they turned to white field with angled stripes of color, like they were being

13  eaten by PacMan."

14       70.     The tech press took notice of the issue in May 2023 when many of their own

15  staffers began to experience data loss. For example, a staffer for *Ars Technica*, a well-known

16  tech news site, reported that two of his SanDisk 2TB Extreme Pro SSDs died, which led to the

17  complete loss of all data on the drives.[47] In another example, a producer for the tech news site,

18  *The Verge*, lost 4TB of video clips saved to his SanDisk Extreme Pro *and* lost 3TB of video he

19  shot on a drive that Western Digital had sent him as a replacement.[48]

---

[44] https://www.reddit.com/r/editors/comments/10syawa/a_warning_about_sandisk_extreme_pro_ssds/ (last accessed October 9, 2023).

[45] *Id*.

[46] *Id*.

[47] Harding, *SanDisk Extreme SSDs Keep Abruptly Failing, supra.*

[48] Sean Hollister, *Buyer beware: Some SanDisk Extreme SSDs are wiping people's data*, THE VERGE (May 22, 2023), https://www.theverge.com/2023/5/22/23733267/sandisk-extreme-pro-failure-ssd-firmware (last accessed October 9, 2023); Hollister, *We Just Lost 3TB of Data on a SanDisk Extreme SSD, supra.*

CLASS ACTION COMPLAINT

**Defendants' Failure to Cure**

71.     After multiple articles calling attention to the problem, Defendants pushed a firmware update for the affected drives at the end of May.[49] Western Digital has stated that it had "identified a firmware issue that can cause SanDisk Extreme Portable SSD V2, SanDisk Extreme Pro Portable SSD V2, and WD My Passport SSD products to unexpectedly disconnect from a computer."[50] Defendants' statement on the firmware update continues, "To address and resolve this issue, we have developed a firmware updater tool that allows the needed firmware to be installed, enabling your continued use of the SSD on your Windows and/or macOS device."[51] However, the SSD product failures go well beyond a connection issue because the data are lost without warning and cannot be accessed or retrieved. Accordingly, Defendants' representation is misleading because it lulls customers rather than warning them they may suddenly and totally lose their data and be unable to retrieve it.

72.     An August 10, 2023, article in ARS TECHNICA reported Western Digital had released the firmware update in May 2023 and stated Defendants claimed that their firmware update would solve the problem, saying "[w]e addressed this firmware issue in the manufacturing process, and we can confirm that the issue is not impacting currently shipping products."[52]

73.     However, even after the May firmware update, the problems persisted. For example, on August 7, 2023, a staffer at *The Verge* had yet another SSD fail.[53]

---

[49] Scharon Harding, *SanDisk's Silence Deafens as High-Profile Users Say Extreme SSDs Still Broken* , ARS TECHNICA, Aug. 10, 2023 (https://arstechnica.com/gadgets/2023/08/sandisk-extreme-ssds-are-still-wiping-data-after-firmware-fix-users-say/) (last accessed October 9, 2023).

[50] https://support-en.wd.com/app/firmwareupdate (last accessed October 9, 2023).

[51] *Id.*

[52] Harding, *SanDisk's Silence Deafens*, *supra*.

[53] *See* Hollister, *We Just Lost 3TB of Data on a SanDisk Extreme SSD, supra.*

CLASS ACTION COMPLAINT

74.    In August 2023, a Reddit user posted: "I literally lost all my data two weeks ago thanks to SanDisk. And my backup drive, a WD passport, failed on the same night. SanDisk is owned by WD. So guess all WD drives are [****]. I lost 5 years of work."[54] On the same day, another Reddit user posted: "I work in digital media and have had an untold number of friends and colleagues lose data because of the recent SanDisk drive failures. I personally had two brand new Extreme Pro SSDs corrupt this summer, both within days of purchasing. I've used these drives for years and never lost data before, but twice in two weeks has scared me away from ever purchasing Sandisk storage again."[55]

75.    Many of the consumers affected by the defect are professionals who have had decades of experience with use and maintenance of data-storage devices. The failures were not a result of user error, but symptomatic of a widespread defect in the design and manufacture of the Drives. This slew of device failures is contrary to Defendants' representations of the Drives as reliable and dependable storage options.

76.    The aforementioned August 10, 2023, ARS TECHNICA article reported that a *Verge* producer complained that "the **replacement** portable SSD SanDisk sent supervising producer Vjeran Pavic after his 4TB Extreme Pro Portable inadvertently wiped 4 TB of video" (emphasis added). The replacement "was supposed to include the firmware fix, but The Verge reportedly 'still lost 3TB of video we'd shot for the Verge because the drive is no longer readable.'" The article noted recent online complaints about product failures of products most likely shipped after the purported May 2023 firmware update. The article reported that neither SanDisk nor Western Digital PR representatives had responded to ARS TECHNICA's request for comments, and apparently not to inquiries by *The Verge* or PetaPixel. The article concluded that SanDisk's firmware update page "fails to prove SanDisk is taking the threat of customer loss

---

[54] https://www.reddit.com/r/gadgets/comments/15noi3k/sandisks_silence_deafens_as_highprofile_users_say/ (last accessed October 12, 2023).

[55] *Id.*

1  seriously, as it merely states that the affected products can 'unexpectedly disconnect from a

2  computer.'"[56]

3  **Defendants Knew or Should Have Known About the Defect Since at Least January 2023**

4         77.    SanDisk appears to have been on notice of this problem for a significant amount

5  of time. In March of 2023, Reddit user KengoSawa2 posted: "This problem is also occurring in

6  Japan. I am a post-production engineer and I encountered the same problem. I can't give you

7  more details, ***but the problem was recognized by the Japanese distributor and passed on to***

8  ***SanDisk***, and is now being verified by the developer. I am also told that this problem is causing a

9  fuss and is only for those manufactured after November 2022. My gut feeling is that this appears

10 to be a design defect due to a minor change or a lot defect due to a problem during

11 manufacturing. In any case, we should continue to report this to the manufacturer to prompt an

12 official statement from Sandisk."[57] (Emphasis added).

13        78.    SanDisk acknowledged that Western Digital was aware of reports with certain

14 4TB SDDs in May 2023, but misleadingly stated it had resolved the issue and would "publish a

15 firmware update" soon.[58]

16        79.    At the time Defendants were selling SanDisk Extreme SSD Drives, Defendants

17 would have had access to their internal technical specifications and testing for the SSD Drives

18 that should have revealed the existence of this defect. For example, Western Digital disclosed to

19 investors and the SEC (but not to its customers) that it has a testing processes and has engaged

20 third parties in multiple regions and countries "to provide various levels of testing, processing, or

21 recertification of returned products for our customers."[59] Western Digital also stated it has "in-

22

23 [56] Harding, *SanDisk's Silence Deafens*, *supra*.

24 [57] https://www.reddit.com/r/editors/comments/10syawa/a_warning_about_sandisk_extreme_pro_
25 ssds (accessed October 9, 2023).

26 [58] Harding, *SanDisk Extreme SSDs Keep Abruptly Failing, supra.*

27 [59] Form 10-K at 9.

28                                              - 24 -

1    house assembly and test operations" in Shanghai, China, and Penang, Malaysia.[60] However, it

2    recently disclosed to investors (but not customers) in that SEC form that its testing "may fail to

3    reveal defects in our products that may not become apparent until after the products have been

4    sold into the market."[61]

5        80.    Despite this, Defendants have not recalled the Drives or taken any action to

6    remove the Drives from the market.

7        81.    In Western Digital's June 30, 2023, annual SEC disclosure form, it admitted on

8    page 38 that its consolidated gross profits for fiscal year 2023 (ending June 30, 2023) were down

9    from fiscal year 2022, reflecting decreased revenue, underutilization of manufacturing, "***and a***

10   ***write-down of certain Flash inventory*** to the lower of cost or market value ($404 million in

11   flash and $201 million in HDD), partially offset related to "a contamination event in the Flash

12   Ventures' fabrication facilities incurred in the prior year" and amortization changes.[62]

13       82.    Defendants' attempt to liquidate their defective Drives does nothing to change the

14   situation for the thousands of consumers who have lost their data. It does nothing to help them

15   recover that data. All it does is place an ever-growing population of consumers, who trust

16   Defendants products, at risk of losing critical data.

17       83.    Defendants marketed and sold the Drives to Plaintiff and other customers with the

18   suggestions to store data on the drives, including photographs and video footage, and therefore

19   intended to affect Plaintiff and Class Members by encouraging them to use the Drives for those

20   purposes. Based on the foregoing facts, the harm to Plaintiff and other Class Members from

21   having their photographs, videos, and other data disappear from their Drives was foreseeable

22   when Defendants marketed and sold the Drives. Plaintiffs and the Class certainly suffered harm

23   from the failure of their Drives that was directly connected to Defendants' misconduct.

24

25   [60] Form 10-K at 8.

26   [61] Form 10-K at 15.

27   [62] Form 10-K at 38 (emphasis added).

28
CLASS ACTION COMPLAINT

1  Defendants' conduct in merely writing down the value of its defective drives and selling them

2  without disclosing the Defect is particularly blameworthy. Defendants' actions and their failing

3  to compensate class members for losses imposed in this manner could encourage Defendants or

4  other manufacturers to act similarly, causing widespread data loss damage to many businesses,

5  government agencies, healthcare facilities, and individuals. Accordingly, Plaintiff and the Class

6  were and should be considered intended beneficiaries of the sales of the Drives to them.

7         84.    Defendants have not come clean since the complaints began about their defective

8  drives. A post on reddit from May 2023 stated that three weeks before the writer attended a trade

9  show and spoke to a Western Digital representative about the problems. The representative told

10  him the problem affected specific and limited set of circumstances for four terabyte (TB) SSD

11  Drives manufactured between January and March 2023 "that are plugged into a Mac for more

12  than 4 hours." A reply to that post pointed out that they purchased their four TB SanDisk

13  Extreme Pro Portable SSD 4TB in December 2022 and it had the same issue, and that numerous

14  posts on that forum and others mentioned the problems occurring on Windows computers.[63]

15  **DEFENDANTS' STATEMENTS AND OMISSIONS VIOLATE CALIFORNIA LAWS**

16         85.    California law is designed to ensure that a company's claims about its products

17  are truthful and accurate.

18         86.    Defendants violated California law by negligently, recklessly, and/or intentionally

19  incorrectly claiming the Drives were capable of dependably and reliably saving, storing, and

20  retrieving data and by not disclosing the Defect to consumers.

21         87.    Defendants have engaged in a long-term marketing campaign, originating at their

22  headquarters, to convince potential customers in California and in the other United States that the

23  Drives were dependably and reliably capable of saving, storing, and retrieving data.

24

25

26

27  [63] https://www.reddit.com/r/editors/comments/10syawa/a_warning_about_sandisk_extreme_pro_ssds/ (last accessed October 9, 2023).

28                                        - 26 -

1    **CONSUMERS' RELIANCE WAS REASONABLE AND FORESEEN BY DEFENDANTS**

2        88.    Reasonable consumers, like Plaintiff, reasonably relied on Defendants' claims,

3    warranties, representations, advertisements, other marketing concerning the particular qualities

4    and benefits of the Drives.

5        89.    Further, Plaintiff read and relied upon the labels and other marketing materials of

6    the Drives when making its purchasing decisions. Had Plaintiff known Defendants had omitted

7    and failed to disclose the Defect from its labels and marketing materials, it would not have

8    purchased the Drive.

9        90.    Reasonable consumers, like Plaintiff, would consider the labeling and marketing

10   of products, such as the Drives, when deciding whether to purchase, such as specific statements

11   and omissions on the Drives' labeling and marketing that would lead them to believe the Drives

12   were capable of dependably and reliably saving, storing, and retrieving data.

13       91.    Here, Plaintiff relied on the specific statements and omissions on the Drives'

14   labeling and marketing that led it to believe they were capable of dependably and reliably saving,

15   storing, and retrieving data.

16                                    **CLASS ALLEGATIONS**

17       92.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil

18   Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of itself and all other similarly situated

19   consumers, and seeks to represent a class defined as:

20               All persons and entities in the United States who purchased a
                 Drive for household or business use from July 1, 2019, to the
21               present (the "Class"). Excluded from the Class are persons who
                 made such purchase for purpose of resale.
22

23       93.    Members of the Class are so numerous that their individual joinder herein is

24   impracticable. On information and belief, members of the Class number in the thousands. The

25   precise number of Class members and their identities are unknown to Plaintiff at this time but

26   may be determined through discovery. Class members may be notified of the pendency of this

27   action by mail and/or publication through the distribution records of Defendants and third-party

28

retailers and vendors. Class members are located both in California and in the other United States.

94.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

a)    Whether the Drives are defective;

b)    Whether the Defect is hardware based or software based;

c)    Whether Defendants knew or should have known about the Defect before selling the Drives to the public;

d)    Whether Defendants failed to disclose the Drives' defect;

e)    Whether the claims of Plaintiff and the Class serve a public benefit;

f)    Whether Defendants' packaging is false, deceptive, and misleading based on the Omissions;

g)    Whether the Omissions are material to a reasonable consumer;

h)    Whether the Omissions are likely to deceive a reasonable consumer;

i)    Whether Defendants had knowledge that the Omissions were material and false, deceptive, and misleading;

j)    Whether Defendants owed a duty of care;

k)    Whether Defendants owed a duty to disclose;

l)    Whether Defendants breached its duty of care;

m)    Whether Defendants violated the laws of the State of California;

n)    Whether Defendants breached its implied warranties;

o)    Whether Defendants engaged in unfair trade practices;

p)    Whether Defendants engaged in false advertising;

q)    Whether Defendants made fraudulent omissions;

r)    Whether Plaintiff and Class members are entitled to actual, statutory, and punitive damages;

s)    Whether Plaintiff and Class members are entitled to declaratory and injunctive relief;

t)      Where Defendants made their marketing and advertising strategies and what were their target markets.

95.    Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other Class members. Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

96.    Plaintiff's claims are typical of the claims of the Class members in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

97.    Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

98.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class member is small such that, absent representative litigation, it would be infeasible for Class members to redress the wrongs done to them.

99.    Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

100.    As a result of the foregoing, class treatment is appropriate.

**FIRST CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability Against Defendants**
**on Behalf of the Class**

101.    Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

102.    Defendants are merchants engaging in the sale of goods to Plaintiff and the Class members.

103.    There was a sale of goods from Defendants to Plaintiff and the Class members.

104.    As set forth herein, Defendants manufactured and sold the Drives, and prior to the time the Drives were purchased by Plaintiff and the Class members, impliedly warranted that the

- 29 -
CLASS ACTION COMPLAINT

Drives were fit for their ordinary use as data storage devices as they do not dependably or reliably save, store, or retrieve data.

105.    Plaintiff and the Class members relied on these implied warranties when they purchased the Drives.

106.    These promises became part of the basis of the bargain between Defendants and Plaintiff and the Class members, and thus constituted implied warranties.

107.    Defendants breached the implied warranties by selling Drives that do not dependably or reliably save, store, or retrieve data.

108.    Defendants were on notice of this breach as they were aware of the Defect. SanDisk stated in May 2023 that Western Digital was aware of a problem for its 4TB Drives and falsely stated it had solved the problem. However, customers continued to report problems with the Drives after this purported solution, including with Defendants' replacement drives.

109.    The Drives were defective when they left Defendants' exclusive control.

110.    Privity exists because Defendants impliedly warranted to Plaintiff and the Class members through the packaging that the Drives were not able to dependably or reliably save, store, or retrieve data and by failing to mention or disclose the Defect.

111.    Defendants knew that the Drives would be purchased and used without additional testing by Plaintiff and Class members.

112.    As a direct and proximate result of Defendants' breach of their implied warranties, Plaintiff and the Class members suffered actual damages as they purchased the Drives that were worth less than the price paid and that they would not have purchased at all had they known of the Defect.

113.    Plaintiff, on behalf of itself and the Class members, seeks actual damages for Defendants' failure to deliver goods that conform to their implied warranties and resulting breach.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SECOND CAUSE OF ACTION**

**Unjust Enrichment Against Defendants on Behalf of the Class**

114.    Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein. This claim is alternative to the first and third through fifth cause of action, pursuant to Fed. R. Civ. P. 8(d)(2).

115.    Substantial benefits have been conferred to Defendants by Plaintiff and the Class members through the purchase of the Drives. Defendants knowingly and willingly accepted and enjoyed these benefits.

116.    Defendants either knew or should have known that the payments rendered by Plaintiff and the Class members were given and received with the expectation that the Drives would dependably or reliably save, store, or retrieve data. As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances.

117.    Defendants were obligated to disclose the Defect because:

(a)    Defendants had exclusive knowledge of the Defect that was not known or reasonably accessible to Plaintiff and the Class members;

(b)    Defendants actively concealed the Defect from Plaintiff and the Class members; and

(c)    Defendants made partial statements on the Drives' packaging that gave a misleading impression to reasonable consumers without further information because the Defect had not been disclosed.

118.    Defendants' acceptance and retention of these benefits of the payments from Plaintiff and the Class members under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiff and the Class members.

119.    Plaintiff and the Class members are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

120.    Plaintiff and the Class members seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

### THIRD CAUSE OF ACTION
**Violations of the Unfair Competition Law, California Business & Professions Code**
**§§ 17200, et seq., Against Defendants on Behalf of the Class**

121.    Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

122.    The Unfair Competition Law prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act." Cal. Bus. & Prof. Code § 17200.

123.    Plaintiff has standing to pursue this claim as it lost money and property when one of its Drives failed, causing it to lose all of the data stored on that drive, which contained video and photographic images taken for its business purposes. In addition to the loss of the property on Plaintiff's Drive, Plaintiff's loss also includes the money it spent on a drive that has no value. Upon discovery of the drive failure, Plaintiff stopped using both of the SSDs it had purchased due to the Drive being unfit for its intended purpose.

***Fraudulent***

124.    Defendants' failure to disclose the Defect is likely to deceive the public.

***Unlawful***

125.    As alleged herein, Defendants' failure to disclose the Defect violates at least the following laws:

- The False Advertising Law, California Business & Professions Code §§ 17500, *et seq*.

***Unfair***

126.    Defendants' conduct with respect to the packaging and sale of the Drives is unfair because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

127.    Defendants' conduct with respect to the packaging and sale of the Drives is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law.

128.    Defendants' conduct with respect to the packaging and sale of the Drives is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one that consumers, themselves, can reasonably avoid.

129.    Defendants were obligated to disclose the Defect because:

(a)    Defendants had exclusive knowledge of the Defect that was not known or reasonably accessible to Plaintiff and the Class members;

(b)    Defendants actively concealed the Defect from Plaintiff and the Class members; and

(c)    Defendants made partial statements on the Drives' packaging that gave a misleading impression to reasonable consumers without further information because the Defect had not been disclosed.

130.    The Omissions were contrary to the representations Defendants made on the Drives' packaging.

131.

132.    Plaintiff and the Class members relied upon the Drives' packaging provided to them by Defendants when making their purchasing decisions. Had Plaintiffs and the Class members known Defendants failed to disclose the Defect from their packaging, they would not have purchased the Drives.

133.    In accordance with California Business & Professions Code § 17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through fraudulent or unlawful acts and practices and to provide complete and accurate disclosures regarding the Drives. Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

134. On behalf of itself and the Class members, Plaintiff also seeks an order for the restitution of all monies from the sale of the Drives, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

135. Defendants' conduct has the capacity to mislead a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances.

**FOURTH CAUSE OF ACTION**

**Violations of California's False Advertising Law, California Business & Professions Code §§ 17500, *et seq.*, Against Defendants on Behalf of the Class**

136. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

137. California's False Advertising Law prohibits any statement or omission in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code § 17500.

138. As set forth herein, Defendants' failure to disclose the Defect is likely to deceive the public.

139. Defendants' marketing and advertising emanated and flowed from their California headquarters. Defendants disseminated or caused their advertising and marketing before the public in California. Defendants also made or caused their advertising and marketing to be disseminated from California before the public in the other United States.

140. Defendants had knowledge about the Defect. Defendants had a duty to disclose the Defect and by failing to disclose such information, misled consumers.

141. Defendants knew, or reasonably should have known, that these omissions were misleading.

142. Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase Defendants' products in the future if it can be assured that the Drives are as advertised and be capable of dependably or reliably saving, storing, or retrieving data.

143.    Plaintiff and the Class members are entitled to injunctive and equitable relief and restitution in the amount they spent on the Drives.

### FIFTH CAUSE OF ACTION
**Fraud by Omission Against Defendants on Behalf of the Class**

144.    Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

145.    Defendants concealed from and failed to disclose to Plaintiff and the Class members the Defect associated with their Drives that do not conform to the products' labels, packaging, advertising, and statements.

146.    Defendants were under a duty to disclose to Plaintiff and the Class members the true quality, characteristics, ingredients, and suitability of the Drives because:

(a)    Defendants were in a superior position to know the true state of facts about their products;

(b)    Defendants were in a superior position to know the actual components, characteristic, and suitability of the Drives for use as a data storage device; and

(c)    Defendants knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover that the Drives were misrepresented in the labels, packaging, advertising, and websites prior to purchasing the Drives.

147.    The facts concealed or not disclosed by Defendants to Plaintiff and the Class members are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Drives.

148.    Plaintiff and the Class members justifiably relied on Defendants' omissions to their detriment. The detriment is evidence from the true quality, characteristics, and components of the Drives, which is inferior when compared to how the Drives are advertised and represented by Defendants.

149.    As a direct and proximate result of Defendants' conduct, Plaintiff and the Class members have suffered actual damages in that they purchased the Drives that were worth less than the price they paid and that they would not have purchased at all had they known of the

Defect associated with the Drives that do not conform to the products' labels, packaging, advertising, and statements.

150.   Plaintiff and the Class members seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as to each and every count, including:

A.   An order certifying this case as a class action, appointing Plaintiff and his counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

B.   An order enjoining Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

C.   An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices allege herein, and injunctive relief to remedy Defendants' past conduct;

D.   An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

E.   An order requiring Defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

F.   An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein;

G.   An order requiring Defendants to pay punitive damages on any count so allowable;

1         H.    An order awarding attorneys' fees and costs to Plaintiff and the Class

2  members; and

3         I.    An order providing for all other such equitable relief as may be just and

4  proper.

5                        **DEMAND FOR JURY TRIAL**

6      Plaintiff demands a trial by jury on all claims so triable.

7

8  Dated: October 17, 2023           OLIVIER & SCHREIBER LLP

                              Christian Schreiber (SBN 245597)

9                                475 14th Street, Suite 250

                              Oakland, CA 94612

10                               Telephone: (415) 484-0980

                              Facsimile: (415) 658-7758

11                               E-mail: christian@os-legal.com

12                               By: */s/ Christian Schreiber*

13

14                               LOCKRIDGE GRINDAL NAUEN P.L.L.P.

                              Robert K. Shelquist

15                               Rebecca A. Peterson (241858)

                              Craig S. Davis

16                               Krista K. Freier

                              100 Washington Avenue South, Suite 2200

17                               Minneapolis, MN 55401

                              Telephone: (612) 339-6900

18                               Facsimile: (612) 339-0981

19                               E-mail: rkshelquist@locklaw.com

                                        rapeterson@locklaw.com

20                                         csdavis@locklaw.com

                                        kkfreier@locklaw.com

21

22                               CAMPBELL LAW

                              D. Michael Campbell

23                               P.O. Box 24358

                              Lakeland, FL 33802

24                               Telephone: (863) 227-4315

                              E-mail: dmcampbell@campblllaw.com

25

26                               *Attorneys for Plaintiff*

27

28

CLASS ACTION COMPLAINT